

IN THE UNITED STATES COURT OF FEDERAL CLAIMS **ORIGINAL**

Bid Protest

| | |
|---|---|
| SOS INTERNATIONAL LTD., ) | **■14- 768C** |
| ) | |
| Plaintiff, ) | No. _____ |
| ) | |
| v. ) | **FILED** |
| ) | |
| UNITED STATES, ) | **AUG 2 2 2014** |
| ) | |
| Defendant. ) | U.S. COURT OF |
| ) | FEDERAL CLAIMS |

## **COMPLAINT**

Seamus Curley
Richard P. Rector
Dawn E. Stern

DLA Piper LLP
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4403
(202) 799-5403 (Fax)
seamus.curley@dlapiper.com

*Attorneys for SOS International Ltd.*

Dated:   August 22, 2014

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

| | |
|---|---|
| SOS INTERNATIONAL LTD., | ) |
| | ) |
| Plaintiff, | ) No. _____ |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, SOS International Ltd. ("SOSi"), as and for its Complaint against the Defendant, the United States, acting by and through the United States Army, Army Contracting Command, Rock Island Contracting Center ("Army" or "Agency'), alleges as follows:

### **Summary Of The Action**

1.      This bid protest challenges the Army's brazen and repeated violations of procurement law, which have resulted in Jorge Scientific Corporation ("Jorge") performing Counterinsurgency ("COIN") Advisory and Assistance Team ("CAAT") services for the Army in Afghanistan under unlawful, non-competitive, sole-source awards since September of 2009.[1]

2.      The Army's actions have resulted in an unprecedented avoidance of competition for approximately five years, despite (a) written determinations by the Army that the requirement should be competed, (b) two competitively awarded contracts to SOSi to replace Jorge's sole-

---

[1] The non-competitive contract holder is referred to as Jorge Scientific Corporation throughout this Complaint. It is SOSi's understanding, however, that Jorge rebranded and now operates under the name Imperatis Corp. ("Imperatis"). SOSi does not have insight into whether a formal name change has been filed with the Government. Thus, references to Jorge in SOSi's pleadings are intended to refer to Jorge, Imperatis, and any other related entities or successors in interests performing the CAAT requirement.

source contract (January 13, 2012 and December 14, 2012), and (c) the near-completion of a third competition that was going to result in a third award to SOSi (based on Final Proposal Revisions ("FPRs") submitted on February 28, 2013).

3.    Rather than stand by the results of its competitions, the Army terminated both awards to SOSi and, after conducting the competition a third time, cancelled the solicitation on March 11, 2013, two weeks after the receipt of FPRs. Three days after the Army cancelled the solicitation, the Army issued a Justification and Approval ("J&A") (March 14, 2013) extending the Jorge sole-source contract through December 2013.  A11-A16.[2]  The Army purported to justify the cancellation of the solicitation and the further extension of Jorge's sole-source contract by representing that the CAAT program would not continue beyond 2013.

4.    On November 19, 2013, however, the Army publicly abandoned its contention that the program would be discontinued and again extended Jorge's sole-source contract, this time through September 15, 2014. A17-A23. The J&A purporting to justify that extension expressed the Army's intention to compete the requirement, without any mention of the Army's March 2013 cancellation of the RFP due to the alleged discontinuation of the program. Despite its newly stated intention to compete the requirement in November 2013, the Army failed to issue a new solicitation until March 19, 2014, and then abruptly cancelled the new solicitation on April 15, 2014, just three days before proposals were due.

5.    Once again, the purported justification for the cancellation was an alleged statement by the Army that it intended to discontinue the program. Despite this second cancellation, however, the Army has continued Jorge's performance under its sole-source contract, which will complete its fifth year in September of 2014. *See generally* A1-23.

---

[2] "A__" refers to the pages of the Appendix accompanying this Complaint, which includes four J&As related to the CAAT procurement. Additionally, in light of the lengthy history of this procurement, we have included a timeline delineating key events as Exhibit 1 to this Complaint.

6.     The Army's egregious conduct, which apparently is driven by program personnel unwilling to separate from the imbedded incumbent, has repeatedly and openly violated procurement laws. The result of the Army's arbitrary, capricious, and unlawful conduct has been to deprive SOSi of a contract fought for and won three times (which included two actual contract awards) and, more importantly, the waste of millions of taxpayer dollars to fund a significantly higher-priced, five-year, sole-source contract to Jorge.

7.     Even more troubling is that SOSi personnel recently have been advised that the Army plans to further extend Jorge's sole-source contract past its current expiration of September 15, 2014, for at least 90 days, and potentially into 2015 or 2016. During the preparation of this Complaint, however, SOSi personnel received information that the Army might be beginning to demobilize some of the CAAT personnel and that a major portion of the demobilization might occur by September 15, 2014. However, SOSi also has been advised that, even if such demobilization occurs, a portion of the CAAT requirement might continue to be performed by Jorge past September 15th or, alternatively, that the demobilization efforts might only be temporary and that the entire program might be further extended.

8.     Given the actions of the Army, which reflect an apparent belief that its procurement preferences are beyond the law, decisive judicial relief is necessary. For these reasons, SOSi brings this matter to the Court and seeks a Permanent Injunction requiring the immediate cessation of the Army fulfilling any of its CAAT needs through a further extension of the non-competitive award to Jorge (or any other non-competitive contract vehicle); a Permanent Injunction requiring the Army to make award based upon the proposals submitted on February 28, 2013 (prior to the first cancellation of the solicitation on March 11, 2013); and related declaratory relief.

3

9. In light of the conflicting information SOSi has received regarding the status of the CAAT program going forward, as set forth in Paragraph 7 above, SOSi has not filed for a Temporary Restraining Order and Preliminary Injunction contemporaneously with this Complaint. If, however, it is confirmed during the initial status conference that the Army intends to continue to procure some or all of the CAAT services from Jorge on a sole-source basis past September 15, 2014, SOSi reserves its right to file a motion seeking such relief.

## Parties

10. Plaintiff SOSi is a corporation organized under the laws of the State of New York, having its principal places of business in New York City, New York and Reston, Virginia.

11. Defendant is the United States, acting by and through the Department of the Army—Army Contracting Command, Rock Island Contracting Center, Rock Island, Illinois.

## Jurisdiction

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1491(b).

13. SOSi is an interested party under 28 U.S.C. § 1491(b) because SOSi was an actual offeror whose direct economic interest was affected by the Army's arbitrary cancellation of the solicitation and the repeated and illegal sole-source extensions of the Jorge contract. SOSi is the rightful awardee of the contract to perform the required services.

## Statement Of Facts

## A. Background (Starting In 2009), Issuance Of The Initial Solicitation (April 30, 2011), Two Awards Made To SOSi (January 13, 2012 and December 14, 2012), And Cancellation Of The Solicitation On The Eve Of A Third Award To SOSi (March 11, 2013).

14. The Army established the CAAT program in 2009. It has since been renamed the Commander International Security and Assistance Force ("COMISAF"). Under the CAAT program, private contractors with expertise in counterinsurgency operations advise and assist

4

International Security Assistance Force ("ISAF") military commanders on the COIN effort in Afghanistan.

15. Jorge was awarded the first contract for CAAT program services on a non-competitive, sole-source basis on September 15, 2009. A3.

16. On April 30, 2011, in accordance with the Competition In Contracting Act ("CICA"), 10 U.S.C. § 2304, *et seq.*, the Army initiated a full and open competition to procure contractor services for the CAAT program. Specifically, the Army issued Request For Proposals No. W52P1J-11-R-0071 (the "RFP"), which contemplated award of a commercial-item, indefinite delivery/indefinite quantity contract with a one-year base period and four six-month option periods. The contemplated contract was intended to replace Jorge's sole-source contract. *See* A3, ¶ 6.

17. SOSi submitted a proposal in response to the RFP on June 16, 2011. The Army then engaged in discussions and required FPRs from all offerors still in the competitive range. On January 13, 2013, the Army awarded the contract to SOSi, which included a maximum value of $97 million.

18. On January 30, 2012, Jorge, which had also submitted a proposal in response to the RFP, filed a bid protest at the U.S. Government Accountability Office ("GAO"), which alleged that the Army committed errors in its evaluation of proposals. A central protest ground was Jorge's assertion that SOSi's proposed price was unrealistically low.

19. In early March of 2012, the Army announced its intention to take corrective action. Consequently, the GAO dismissed the protest as academic. The Army then implemented its corrective action by amending the RFP, to require more detailed labor pricing and information on the compensation proposed for contractor personnel, and requesting revised proposals.

5

20.     In implementing its corrective action, the Army required revised proposals on April 8, 2012. The Army then requested clarifications. Next, the Army once again conducted discussions and then required new FPRs, but FPRs were not required until October 29, 2012. The process between the Army deciding to re-open the competition and the submission of new FPRs took nearly eight months.

21.     On December 14, 2012, after taking approximately 45 days to evaluate the FPRs, the Army once again awarded the CAAT contract to SOSi. The second contract awarded to SOSi included the same maximum value and same performance period.

22.     On December 21, 2012, following the second award to SOSi, Jorge filed another bid protest at the GAO. While Jorge challenged certain aspects of the Army's evaluation of its proposal, Jorge again alleged that SOSi's price was unrealistically low. At the time, by virtue of the award, Jorge must have known that the Army had determined that SOSi fully complied with the revised RFP and that SOSi's price was realistic. Apparently to take advantage of the automatic stay of the new award to SOSi, Jorge lodged its disagreement with these highly discretionary Army determinations.

23.     On February 13, 2013, after initially manifesting its intention to defend vigorously against Jorge's speculative protest, the Army abruptly announced its intention to take corrective action. The corrective action once again included amending the RFP and requesting revised proposals from offerors, which were to include the submission of updated past performance information, new resumes for certain key personnel, and revised pricing.

24.     On February 28, 2013, SOSi submitted an FPR (its third FPR) in response to the revised RFP. Shortly afterwards, on March 11, 2013, the Army cancelled the RFP without explanation.    SOSi was later informed that a high-ranking program official advised the

6

contracting office that the program would be discontinued as of December 31, 2013. As discussed below, the Army's alleged intention to discontinue the program was memorialized in its March 14, 2013 J&A. A13, at ¶ 6.

25.     SOSi considered protesting the cancellation at that time. However, given the Army's stated intent to discontinue the program by the end of the year, SOSi opted not to do so.

## B.     The Army's March 14, 2013 J&A Extending Jorge's Sole-Source Contract Through December 2013 To Facilitate The Alleged Wind-Down.

26.     The Army has purported to justify Jorge's performance on a sole-source basis from September 15, 2009 to the present through a series of J&As. *See generally* A1-A23.

27.     The initial September 15, 2009 award to Jorge was accompanied by a contemporaneous J&A. *See* A3, at ¶ 10. This was followed by J&As dated August 31, 2011 (A1-A5), March 14, 2012 (A6-A10), and September 1, 2012 (*see* A21, at ¶ 10). Pursuant to the September 2012 J&A, Jorge's sole-source contract was set to expire on March 14, 2013, which coincided with the (third) competitive award to be made to SOSi under the RFP. *See* A21, at ¶ 10. However, in light of the Army's cancellation of the RFP on March 11, 2013, the Army further extended the Jorge contract. A13, at ¶ 6

28.     Specifically, the Army issued a fifth J&A on March 14, 2013, which extended Jorge's contract through December 2013, at which time the Army indicated that it intended to discontinue the CAAT program. A13, at ¶ 6. Notably, given that the Performance Work Statement contemplated a 60-day mobilization period, the Army could have proceeded with award to SOSi through the purported end of the CAAT program in December 2013.

29.     SOSi was advised that the Army anticipated that any award to SOSi would result in another protest from Jorge and the implementation of a CICA stay. Thus, the Army's apparent position was that a third competitive award to replace Jorge's sole-source contract

7

would have been a futile act due to Jorge's leveraging of the CICA stay to keep itself in place under higher pricing through the purported end of the program.

30.    The March 2013 J&A memorialized the Army's purported intention to cancel the program as of December 31, 2013. A13, at ¶ 6. Apparently, according to the March 14 J&A, Jorge sought to further leverage the CICA stay by filing another protest on February 27, 2013, to challenge the Army's request for revised proposals. A12.

31.    Upon information and belief, any such protest was without merit.

32.    As noted, given the Army's stated intention to cancel the program, SOSi did not protest the cancellation of the RFP or the short-term extension of Jorge's sole-source contract.

33.    Thus, aided by the Army's sluggish efforts to award a CAAT contract on a competitive basis during 2011 and 2012, Jorge managed to continue to perform the services on a sole-source basis for 22 months (May 2011 – March 2012) during the submission and evaluation of proposals, pendency of its multiple bid protests, and the ensuing corrective action. Viewed another way, the extension through December 31, 2013, meant that the Army had found a way to allow Jorge to continue on a sole-source basis for over four years from contract inception.

## C.    The Army's November 19, 2013 J&A Further Extending Jorge's Sole-Source Contract Through September 15, 2014 Due To The Continuation of the Program.

34.    As alleged, at the time the March 14, 2013 J&A was issued, the Army's public position was that the CAAT program would be discontinued and that Jorge would complete the program as the sole-source incumbent. A13, at ¶ 6. However, the Army's public position regarding the discontinuation of the program changed before the end of the year.

35.    On November 19, 2013, the Army issued another J&A (the sixth since 2009) extending Jorge's sole-source contract from December 15, 2013 (the then-current expiration

8

date) through March 15, 2014, with a six-month option through September 15, 2014. A17. Jorge still performs under this contract extension today.

36.     The November 2013 J&A made no reference to the Army's prior claim that the CAAT program would end in December 2013. *See* A17-A23. Rather, ironically, the J&A stated that the sole-source extension was necessary to provide the contracting command "sufficient time to solicit and award a competitive follow-on contract." A17, at ¶ 3c. The J&A stated that the solicitation process commenced in October 2013 and was expected to conclude with the award of a follow-on contract on a competitive basis in February 2014. A19, at ¶ 5c. The J&A stated that the additional six-month option was necessary to account for time needed to resolve any protest that might be filed against the competitive award and to allow for mobilization by a new contractor, if necessary. A18, at ¶ 3c. Notably, at the time the J&A was issued, the Army still had not issued a new competitive solicitation.

37.     The November 2013 J&A cited as the basis for the extension FAR 6.302-1(a)(2)(iii)(B), which provides that a contract can be awarded on a non-competitive basis "in the case of follow-on contracts for the continued provision of highly specialized services when it is likely that award to any other source would result in . . . [u]nacceptable delays in fulfilling the agency's requirements." *See* A18, at ¶ 4.

38.     Notwithstanding FAR 6.302-1(a)(2)(iii)(B)'s reference to the "provision of highly specialized services[,]" the J&A acknowledged that the Army's own market research confirmed that there were six vendors capable of providing the services and that three contractors, including SOSi, had expressed interest in an award of the bridge contract. A20-A21. The written determination that multiple contractors could provide these services, while legally

9

significant, was not new information, as SOSi had already competed for the contract three times and had been awarded the contract twice.

39.     The J&A further stated that "[o]nly one responsible source and no other supplies or services will satisfy agency requirements" because Jorge is already in place, the "Government is unable to compete this effort and have a contract in place by 15 December 2013," and, absent the award of a sole-source contract, the Army would face a lapse in services. A19, at ¶ 5c. The J&A did not explain why the Army earlier represented that the program would be cancelled or why the Army failed to begin the procurement process earlier to avoid a need for a further extension of Jorge's sole-source contract. *See* A17-A23.

## D.     The Army's Reissuance Of The RFP (March 19, 2014) And Its Abrupt Cancellation (April 15, 2014) Just Days Before Proposals Were Due.

40.     Contrary to the November 2013 J&A's indication that a competitive award likely would be made by February 2014, it took the Army until March 19, 2014, to even issue the new solicitation (RFP No. W56MY-14-R-0002 (the "second RFP")), which sought to procure the CAAT program services for an eight-month base period, with two six-month option periods. Presumably to limit protest risk and to incentivize offerors to submit competitive pricing, the new RFP provided that award would be made on a lowest price/technically acceptable ("LPTA") basis. Although the evaluation criteria differed from the initial RFP, the second RFP's technical requirements were essentially the same as those of the May 2011 RFP, which previously resulted in two actual awards to SOSi and one near award cancelled at the eleventh hour.

41.     Once again, SOSi began preparing a proposal in response to a CAAT program solicitation. However, without any warning or explanation, the Army cancelled the second RFP on April 15, 2014, just three days before proposals were due (April 18, 2014).

10

42.     One day after this most recent cancellation, on April 16, 2014, SOSi was informed that the second RFP was cancelled in response to an indication from a high-ranking program official that, once again, the program was being discontinued. Additionally, the Army expressed its concern of a pre-award protest by Jorge challenging the terms of the new RFP.

## E.     Current Agency Plans To Extend The Sole-Source Contract With Jorge Beyond September 2014.

43.     Throughout this protracted timeline, upon information and belief, Jorge has likely performed the contract (and will continue to) at rates that are 30-50 percent higher in terms of price than what SOSi had proposed. The Army's estimate was approximately $97 million for the three years of performance contemplated by the RFP. Presumably, this was largely based on Jorge's sole-source performance.

44.     This potentially sheds light on why the Army's estimate for the work was, in SOSi's view, significantly higher than the fair and reasonable—and realistic, as confirmed by the Army—price offered by SOSi. Consistent with this, SOSi was recently advised that Jorge offered to reduce its price if the Army extended Jorge's sole-source contract past September 15, 2014.

45.     After the Army's cancellation of the second RFP, SOSi lodged a written request with the Army that the egregious history of the CAAT procurement be internally investigated by the Agency. An Army representative subsequently confirmed that a referral to the Army Inspector General had been made.

46.     In the interim, because SOSi was once again told by the Army that the program was being discontinued, SOSi opted not to protest the cancellation of the second RFP and settled with the Army the termination of the two contracts awarded to SOSi on January 13, 2012 and December 14, 2012. Notably, the fixed settlement amounts associated with each termination did

11

not fully reimburse SOSi for the substantial costs incurred in connection with defending and ramping up to perform the two awards and participating in the cancelled procurements.

47.    Currently, Jorge's sole-source contract is scheduled to expire on September 15, 2014. Despite the Army's statement that the March 2014 RFP was cancelled because the program was ending, SOSi has received conflicting information regarding the Army's plans to continue to procure the CAAT services on a sole-source basis.

48.    During an August 2014 visit to Afghanistan, SOSi's Chief Executive Officer, Julian Setian, was informed that, at a minimum, the Army is planning to extend Jorge on a non-competitive basis for at least another 90 days past the current September 15, 2014 contract expiration. SOSi had separately been advised that the extension could go significantly beyond 90 days—*i.e.*, potentially into 2016.

49.    SOSi personnel have also been advised that the Army continues to prefer that sole-source contract extensions be issued to Jorge out of fear that the award of a contract on a competitive basis to a new contractor at a much lower price will result in a change in the contractor personnel performing the CAAT services.

50.    During the preparation of this Complaint, SOSi was told that the Army might be in the process of demobilizing the CAAT contractor personnel with an anticipated demobilization occurring, in large part, by September 15, 2014. However, SOSi was also advised that the demobilization may not be an indication that the program is ending. Rather, the demobilization effort may only be temporary until the Army obtains approval to further extend Jorge's sole-source performance of the CAAT services. As noted, SOSi was also informed that, even if the Army does proceed with the demobilization, it may not include all CAAT services and the Army might continue at least one component of the CAAT program though an extension

12

of Jorge's sole-source contract.   Upon information and belief, the component of the program that may be continued was competitively procured as part of the cancelled RFPs and is within the scope of work of the contracts awarded to SOSi and the February 2013 FPRs.

51.     In sum, the Army has never discontinued the CAAT program, its requirement seemingly continues to exist, and the program has been previously competed multiple times. As such, it is clear that the Army should be fulfilling its requirement through a competitively awarded contract, not a higher-priced, unlawful, sole-source contract that has been in place for nearly half a decade.

## COUNT I
### Army's Arbitrary, Capricious, And Unlawful
### Use And Planned Future Use Of Jorge On A Non-Competitive Basis

52.     SOSi incorporates by reference and re-alleges the allegations in paragraphs 1-51 of this Complaint as if fully set forth herein.

53.     Jorge has been performing CAAT services under a sole-source contract since September 15, 2009.  The November 19, 2013 J&A purporting to justify the current term of performance stated that the Agency intended to make a competitive award to replace the Jorge sole-source contract by February 2014.  The Army failed to issue a revised solicitation until March of 2013 and then abruptly cancelled the second RFP on April 15, 2014.  No further steps have been taken to compete the requirement.

54.     While stating that the services are "highly specialized[,]" the November 2013 J&A admits that other companies, including SOSi, can fulfill the requirement.  A competitive contract was twice awarded to SOSi in 2012 to replace the sole-source contract and, upon information and belief, would have been awarded to SOSi a third time in 2013 had the Army not cancelled the RFP after the submission of FPRs.

13

55.     The Army's continued fulfilment of its requirement through Jorge on a non-competitive, sole-source basis violates CICA and its implementing regulations in the FAR.

56.     Separately, but for the same reasons, the Army's apparent intention to further extend the Jorge sole-source contract violates the law. Further, any Army intention to continue Jorge's performance is inconsistent with its purported justification for cancelling the second RFP (*i.e.*, that the program was being discontinued, which is the same erroneous justification the Army used to cancel the initial RFP in 2013).

57.     The history of this procurement, the repeated avoidance of competition, the inconsistent J&As, and the Army's multiple extensions of Jorge's sole-source contract compel the conclusion that the Army, likely driven by program personnel, has been steering and continues to steer the requirement to Jorge without competition. In addition to CICA, such conduct violates: FAR 1.102(b)(1)(iii), which provides that "[t]he Federal Acquisition System will . . . [s]atisfy the customer in terms of cost, quality, and timeliness of the delivered product or service by, for example . . .promoting competition"; FAR 1.102(b)(3), which provides that "[t]he Federal Acquisition System will . . . [c]onduct business with integrity, fairness, and openness"; FAR 1.602-2(b), which provides that "[c]ontracting officers shall . . . [e]nsure that contractors receive impartial, fair, and equitable treatment"; and FAR 3.101-1, which provides that "Government business shall be conducted in a manner above reproach and, except as authorized by statute or regulation, with complete impartiality and with preferential treatment for none."

58.     Even if the Army disputes the allegation that the repeated sole-source extensions to Jorge have been intentional and part of an effort to avoid competition, at best, the Army's continued reliance upon a sole-source contract—after nearly five years—stems from grossly deficient procurement processes and a lack of meaningful advanced planning, which has

14

included: unjustifiable delays in making procurement decisions and taking procurement actions; the Army's miscalculated retreat from two competitive awards to SOSi; the cancellation of the initial RFP after the submission of FPRs due to the now-proven misrepresentation that the program would end in December of 2013; the re-issuance and cancellation of the second RFP in April 2014 due to the same erroneous misrepresentation; and the Army's failure to conduct and complete a competition despite the November 2013 J&A's statement that the Army intended to do so.

59.    CICA prohibits the use of sole-source procurements when the circumstances justifying the award are the result of the agency's lack of advanced planning.  10 U.S.C. § 2304(f)(4)(A); *see also* FAR 6.301(c)(1).  While SOSi believes the egregious facts in this matter establish that the Army has purposely steered the CAAT work to Jorge, SOSi need not prove this to prevail on Count I.  Rather, the alternative explanation—which includes more than three years of administrative incompetence in connection with the procurement since the requirement was first competed—easily demonstrates a lack of advanced planning.

60.    In either case, the Army's continued reliance upon Jorge on a sole-source basis is arbitrary, capricious, an abuse of discretion, and otherwise violates law.

61.    In either case, any further extension of the sole-source contract to Jorge (or the use of any other contract vehicle with Jorge on a non-competitive basis) would be arbitrary, capricious, an abuse of discretion, and would otherwise violate the law.

WHEREFORE, SOSi seeks the following relief from this Court, to be memorialized in Orders and a Judgment, as appropriate:

(a)     A Permanent Injunction prohibiting the Army from further extending the Jorge sole-source contract or otherwise continuing to use Jorge to fulfill its requirement on a non-competitive basis.

(b)     A Declaratory Judgment determining that the Army's use and/or planned future use of Jorge on a non-competitive basis has been and is arbitrary, capricious, an abuse of discretion, and in violation of the law;

(c)     An exercise of the Court's power to remand and retain jurisdiction over this matter, if appropriate, pursuant to Rule 52.2 of the Rules of the Court of Federal Claims;

(d)     An award of attorney's fees; and/or:

(e)     Any other relief the Court deems just and proper.

## COUNT II
### Army's Arbitrary, Capricious, and Unlawful
### Cancellation Of RFP No. W52P1J-11-R-0071 On March 11, 2013

62.     SOSi incorporates by reference and realleges the allegations in paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.     In February 28, 2013, SOSi submitted an FPR (its third) in response to RFP No. W52P1J-11-R-0071.

64.     On March 11, 2013, before awarding a contract based upon the submission of FPRs, the Army cancelled the RFP for the purported reason that the CAAT program was ending in December 2013.   This rationale for cancelling the RFP has proven to be demonstrably inaccurate.

16

65.    The Army's cancellation of the RFP was either a pretext to ensure that Jorge would continue performing the services on a sole-source basis or was otherwise the result of irrational, arbitrary, and capricious decision-making.

66.    Such conduct violates: FAR 1.102(b)(1)(iii), which provides that "[t]he Federal Acquisition System will . . . [s]atisfy the customer in terms of cost, quality, and timeliness of the delivered product or service by, for example . . .promoting competition"; FAR 1.102(b)(3), which provides that "[t]he Federal Acquisition System will . . . [c]onduct business with integrity, fairness, and openness"; FAR 1.602-2(b), which provides that "[c]ontracting officers shall . . . [e]nsure that contractors receive impartial, fair, and equitable treatment"; and FAR 3.101-1, which provides that "Government business shall be conducted in a manner above reproach and, except as authorized by statute or regulation, with complete impartiality and with preferential treatment for none."

67.    Such conduct also violates CICA and FAR Part 15's requirements regarding negotiated procurements, including the requirement that the contract be awarded to the offeror determined to be the appropriate awardee based upon the solicitation's evaluation criteria.

68.    The Army's March 2013 cancellation of the RFP was arbitrary, capricious, an abuse of discretion, and in violation of the law. Further, all of the Army's procurement actions since then, including its internal determination (now proven inaccurate) that the program would be cancelled, its contradictory statement that the program would be competed in the November 2013 J&A, its reissuance and then cancellation of the second RFP in April of 2014, and its apparent decision to move forward with Jorge beyond the September 2014 expiration of its sole-source contract are part of the same pretextual or irrational pattern of keeping the contract with Jorge.

17

69. Upon information and belief, the Army's technical requirements have not materially changed. As the chain of events following the March 2013 cancellation have established, the Army's requirements still exist in some form. As such, the Army should vacate its erroneous cancellation of the original RFP, make award pursuant to the FPRs submitted on February 28, 2013, and fulfill its requirements through a competitively awarded contract.

WHEREFORE, SOSi seeks the following relief from this Court, which would be memorialized in Orders and a Judgment, as appropriate:

(a)    A Declaratory Judgment finding that the Army's March 11, 2013 cancellation of the RFP was arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with the law, and a similar finding with respect to procurement actions and inactions that followed;

(b)    A Permanent Injunction requiring the Army to vacate the March 2013 cancellation of the RFP and to make award based upon the competitive FPRs submitted on February 28, 2013.

(c)    An award of attorney's fees, bid and proposal costs for the proposal culminating in a February 28, 2013 FPR (unless the Permanent Injunction under item (b) is granted), and bid and proposal costs for the proposal prepared but not submitted under the reissued RFP, which was cancelled by the Agency on April 15, 2014;

18

(d)     An exercise of the Court's power to remand and retain jurisdiction over this matter, if appropriate, pursuant to Rule 52.2 of the Rules of the Court of Federal Claims; and/or

(e)     Any other relief the Court deems just and proper.

Respectfully submitted,

Seamus Curley by Dawn Stern

Seamus Curley
Richard P. Rector
Dawn E. Stern

DLA Piper LLP
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4403
(202) 799-5403 (Fax)
seamus.curley@dlapiper.com

*Attorneys for SOS International Ltd.*

Dated:  August 22, 2014

19